114

Fernando Velázquez, Juan B. Román, Ramón González Vélez, Manuel Piñeiro, Victoriano Aguilar, Primo Alonso y José P. González, demandantes-peticionarios-apelantes-apelados, *v.* Junta Insular de Elecciones, demandada, y Antonio González, Manuel Viñas Jr., Laureano García Padilla, Ramón Delgado García, Alfredo Toledo, Patricio Delgado y Lucas Rosa, interventores-apelados-apelantes.

No. 4875.—*Sometido:* Feb. 4, 1929. *Resuelto:* Nov. 7, 1929.

*J. Valldejuli Rodríguez,* abogado de los peticionarios-apelantes; *Hon. Attorney General James R. Beverley,* y *Tomás Torres,* abogados de la demandada-apelada; *Bolívar Pagán,* abogado de los interventores.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

La Corte de Distrito de San Juan se negó a expedir un auto de *certiorari* dirigido a la Junta Insular de Elecciones. También dejó sin efecto una orden requiriendo al Gober-

nador de Puerto Rico que no expidiera ciertos certificados de elección.

Los apelantes insisten en que la corte erró:

Primero, al resolver que el recurso de *certiorari* autorizado por la sección 89 de la Ley Electoral sólo se contrae a revisar los procedimientos habidos ante la Junta Insular de Elecciones.

Segundo, al declarar que el procedimiento establecido por la sección 89 no es el medio prescrito para ventilar un juicio electoral en un sentido amplio.

Tercero, al resolver que la corte sólo podía revisar las cuatro papeletas protestadas que habían sido marcadas con dos cruces y adjudicadas por la Junta Insular de Elecciones; y al negarse también a revisar la actuación de la junta respecto a estas papeletas por el fundamento de que toda vez que no podían alterar el resultado de la elección semejante examen no tendría fin práctico alguno.

Cuarto, al resolver que la corte no podía intervenir en los actos de los representantes de los distintos partidos políticos en las juntas de colegio.

Quinto, al declarar que las cortes de Puerto Rico carecen de jurisdicción en una acción civil o criminal para corregir errores y fraudes perpetrados por los funcionarios de los colegios electorales, debido a que gozan de impunidad.

Sexto, al dejar sin efecto, *motu proprio,* una orden anterior requiriendo del Gobernador de Puerto Rico que no expidiera los certificados de elección a los candidatos socialistas constitucionales hasta que la acción fuese resuelta definitivamente, sin tener en cuenta el hecho de que la sentencia de la corte de distrito no era final.

■ La sexta y última contención es insostenible, por los motivos consignados en el caso de *Towner* v. *Corte de Distrito de San Juan,* 39 D.P.R. 505.

■ La argumentación en apoyo del quinto fundamento para esta apelación no se refiere a manifestación alguna de los jueces de distrito que pudiera interpretarse en el sentido

de resolver que los jueces y secretarios de colegios electorales están exentos de toda responsabilidad, y que no podría imputárseles error o fraude bien en una acción civil o en una criminal. Los jueces de distrito si dijeron que era innecesario resolver la contención del abogado de los peticionarios al efecto de que dejar el destino de una elección general en Puerto Rico en manos de las juntas locales sería abrir las puertas para que se cometieran fraudes a granel, pues entonces tales juntas se convertirían en los únicos árbitros de las contiendas electorales, toda vez que estarían exentas de investigaciones civiles o criminales. No hallamos error en esto. La cuestión a resolver por la corte era la relativa al alcance y límite del remedio estatutorio de . certiorari y no a cuál pudiera ser el resultado de que la Legislatura dejara de proveer un sustituto adecuado para la anterior ley concerniente a contiendas electorales.

En tanto en cuanto no han sido resueltas ya, la tercera, la cuarta y la quinta contención son meras variaciones de la primera y la segunda, y todas se basan principalmente en el *dictum* o en los *obiter dicta* en el caso del *Pueblo* v. *Oms,* 34 D.P.R. 455 en que este tribunal dijo:

"Cuando se comete un fraude en cualquier parte de la Isla la persona perjudicada tiene el remedio apropiado a su alcance. Si se comete fuera de San Juan la persona agraviada tiene el remedio adicional de poder establecer un recurso de *certiorari* en San Juan, donde la Junta Insular de Elecciones reside, el Superintendente tiene su oficina y donde, como es de presumirse, las papeletas electorales son conservadas.

"El procedimiento de *certiorari* de referencia, aunque debido al uso del nombre puede tener alguna de las características de un auto clásico de *certiorari,* no está limitado a un examen de la documentación oficial. Las protestas, los *affidavits* presentados ante la junta y posiblemente alguna prueba *aliunde,* especialmente si ha sido descubierta recientemente, podrían ser revisados en un procedimiento de *certiorari.* La idea de la Legislatura fué proveer un auto para la corrección de los abusos electorales, y lo mismo que en la Ley Municipal y la Ley de Compensaciones a Obreros, la legislatura ha con-

ferido un remedio. El limitarlo a la documentación oficial haría el auto en algunos casos completamente ilusorio.''

En el caso de Oms el procedimiento fué el de *quo warranto*. La médula de la decisión en lo que ahora nos concierne fué que el remedio de *quo warranto* no procede a menos que se invoque dentro de quince días después de publicarse el resultado de un escrutinio por la Junta Insular de Elecciones. Lo que allí se dijo respecto de la eficacia y alcance del procedimiento de *certiorari* como un remedio cumulativo o alternativo se explica y circunscribe en el caso de *Diez de Andino* v. *Junta Insular de Elecciones*, 35 D.P.R. 99, que era un procedimiento de *certiorari*. Al resolver la cuestión cuando fué presentada directamente para ser resuelta este tribunal dijo:

''Nos inclinamos a convenir con la apelada en la corte inferior en que por este auto de *certiorari* sólo podemos revisar los actos ejecutados ante la junta. En el caso del Pueblo v. Oms, 34 D.P.R. 455, manifestamos que quizá en ciertos casos podría ofrecerse la prueba testifical, pero la idea que tenemos es que tal prueba testifical sólo podía esclarecer lo que en realidad había tenido lugar ante la junta.

''También convenimos con la apelada en que la actuación de la junta al negarse a abrir las papeletas emitidas en ciertos precintos era una cuestión dentro de su sana discreción, y a falta de algo que indique haberse cometido alguna irregularidad, la discreción de dicha junta al no abrir dichas papeletas no puede ser revisada. La mera petición del candidato vencido de que todas las papeletas sean examinadas no era suficiente.''

De la opinión en el caso de *Roca* v. *Junta Insular de Elecciones*, 35 D.P.R. 642, en que se expone y se interpreta la sección 89 de la Ley Electoral, tomamos el siguiente extracto:

''Es necesario reconocer que la ley no resuelve expresamente el caso del peticionario. Hubiera sido bien fácil decir a la Legislatura, si ése hubiera sido su deseo, en ese mismo *disponiéndose*, o en otro que cuando el número de papeletas declaradas nulas fuere suficiente para cambiar el resultado de la elección, procediera la Junta a examinar de nuevo dichas papeletas y a resolver según su criterio, que no se concibe en verdad que no lo hiciera, teniendo en cuenta especialmente lo detallado, lo minucioso de la ley que va señalando cada trámite del procedimiento y cada función de los organismos que crea.

"Por sus términos el *disponiéndose* sólo abarca: el caso de la *contradicción entre las entradas de una hoja de cotejo o entre el número de personas que votaron según las listas de votantes* y el número de papeletas encontradas en la urna, y el de la *contradicción entre el número de papeletas encontradas en la urna y el número de papeletas distribuidas, según el sumario de la hoja de cotejo.*

"Y para tales casos de contradicción, si pudiere afectar el resultado de la elección, ordena la ley a la junta ¿qué? *recontar todas las papeletas del colegio y corregir su hoja de cotejo de acuerdo con el resultado del recuento.*

"¿Qué significa recontar? ¿Quiere decir re-examinar? ¿Quiere decir abrir los paquetes que la ley ordenó a la Junta de Colegio que formara y contar el número que cada uno contiene?

"Atendido el espíritu que informa la ley toda, lo escrupuloso que ha sido el legislador al fijar cada detalle y cada facultad y la ausencia de disposición expresa creemos que la última interpretación es inevitable.

"Para que una papeleta sea declarada nula, lo mismo que para que una papeleta sea adjudicada, se necesitó el consentimiento unánime de los representantes de los tres partidos que fueron a las urnas.

"Pudo haber existido un error al contar las papeletas y ese error es el que puede y debe corregirse, pero la Junta Insular no está facultada para sustituir su juicio por el juicio unánime de los representantes legítimos de los únicos interesados en la contienda. Hay un sólo caso en que la Junta juzga el mérito de la papeleta en sí y está dispuesto expresamente por la ley, el de las papeletas protestadas."

Los apelantes también hacen algún hincapié en la manifestación posterior, contenida en la misma opinión al efecto de que:

"Cuando existe fraude, cuando se cometen errores fundamentales de ley, no es la Junta Insular, sino las cortes de justicia de acuerdo con todos los precedentes, las llamadas a resolver los casos."

No se desprende, sin embargo, que el *certiorari* sea el remedio. Si la facultad de la Junta Insular de Elecciones se limitara a las materias indicadas en el caso de Roca, y si se restringiera la revisión por *certiorari* a una consideración de las cuestiones que propiamente le fueron sometidas a la

junta (según se resolvió en el caso de Diez de Andino) la conclusión inevitable sería que no se tuvo la intención de que el recurso autorizado por la sección 89 de la Ley Electoral fuera un nuevo medio para ventilar todos los casos sobre impugnación de elecciones, que cayeran dentro del alcance de la ley de 1906 (Estatutos Compilados de 1911, págs. 936–942).

■ En la corte de distrito no se concedieron las costas. Los interventores apelan y señalan esta omisión como error. Cierto es que la única cuestión verdaderamente envuelta (aparte de la de costas) había sido resuelta ya por este tribunal. Los peticionarios tendrían poca razón para quejarse si hubieran sido condenados en costas. Empero, las cortes ocasionalmente se revocan a sí mismas, y deben hacerlo así siempre que se les demuestre claramente que han estado equivocadas. Nada hallamos en el alegato de los peticionarios que exija o justifique la modificación de los puntos de vista expresados en los casos de Roca y Diez de Andino; pero tampoco hallamos en la negativa de la corte inferior de conceder las costas a los interventores un abuso tal de discreción que justifique la revocación.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Señor Texidor no intervino.